NOTICE: All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports. If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

23-P-601                                      Appeals Court

COMMONWEALTH  vs.  MATTHEW W. LINENKEMPER.

No. 23-P-601.

Middlesex.     March 14, 2024. - July 19, 2024.

Present:  Meade, Neyman, & Hand, JJ.


Assault and Battery.  Assault and Battery by Means of a
      Dangerous Weapon.  Indecent Assault and Battery.  Practice,
      Criminal, Instructions to jury.  Evidence, Prior
      misconduct, Relevancy and materiality.


      Complaints received and sworn to in the Marlborough
Division of the District Court Department on January 18 and 27,
2022.

      The cases were tried before Meghan S. Spring, J.


      Eric W. Ruben for the defendant.
      Chia Chi Lee, Assistant District Attorney, for the
Commonwealth.


      NEYMAN, J.  Following a trial in the District Court, a jury

found the defendant, Matthew W. Linenkemper, guilty of three

counts of assault and battery on a family or household member,

one count of assault and battery by means of a dangerous weapon,

and one count of indecent assault and battery on a person over

the age of fourteen.[1]  On appeal, the defendant contends that the judge (1) provided erroneous instructions regarding prior bad act evidence, and (2) abused her discretion in admitting such evidence.  We hold that a portion of the judge's prior bad act instructions were incorrect, but the errors did not create a substantial risk of a miscarriage of justice.  Where we also conclude that the judge acted within her discretion in admitting the evidence challenged on appeal, we affirm the judgments.

Background.  1.  Charged conduct.  The defendant and the victim had an "on and off" dating relationship between August of 2020 and January of 2022, and lived together much of that time.  The defendant's convictions stemmed from three incidents occurring on three separate days.  All three incidents involved sudden changes in behavior by the defendant that rapidly escalated into physical violence perpetrated against the victim.  In early January of 2021, while the victim was helping her young son get ready for school, she yelled to the defendant multiple times because she could not find her keys.  The defendant "got immediately angry," grabbed the victim's face, and squeezed her nose "to the point where [she] started bleeding."  On December 24, 2021, while driving together, the defendant "grabbed" the

---

[1] The jury found the defendant not guilty of kidnapping, witness intimidation, and a separate count of assault and battery by means of a dangerous weapon.

victim by her ponytail, and "slammed [her] face down on the shifter of the car."[2]  On January 9, 2022, while the defendant and the victim "were in bed together" and viewing videos on the victim's cell phone, the defendant became irritated and "grabbed the phone out of [her] hand, and hit [her] in the face with it." When the victim attempted to leave the bed, the defendant grabbed her, "got on top of [her]," and twisted her breast while stating that "he would show [her] what it's like to get fucked really good."

2.  <u>Prior bad acts</u>.  Before trial, the Commonwealth moved to introduce evidence of three prior bad acts of the defendant. The Commonwealth argued that the evidence was relevant to show the hostile nature of the relationship between the defendant and the victim, to counter any claim of accident or mistake, and to show a continuing pattern of behavior by the defendant.  The defendant objected on the basis that the evidence was not "necessary," and that the risk of unfair prejudice outweighed the probative value of the evidence.  The judge ruled that she would allow two of the prior bad acts to be admitted in evidence but would exclude the third.[3]

---

[2] The victim's testimony was corroborated, in part, by photographs admitted in evidence depicting injuries caused by the defendant.

[3] The judge excluded a prior bad act from August of 2021, involving an incident where the defendant allegedly spat on the

The first prior act involved an incident on December 25, 2020, during which the victim found the defendant's medication on the floor of their home.  In response, the defendant threw an object at her and "punched the back of [her] head."  Following this portion of the victim's testimony, the judge provided a comprehensive "cautionary instruction" describing the limited purposes for which such evidence may and may not be considered.[4] The defendant did not object to the content of the instruction.

victim and "whipped her with a sweatshirt."  The judge found that although this incident showed "the hostile relationship between the parties," it was "too prejudicial" to admit in evidence.

[4] The judge instructed as follows:

"Ladies and gentlemen, allow me to give you a cautionary instruction.  The testimony that they're talking about right now is about certain acts allegedly committed by the defendant.  The defendant is not charged with committing any crimes other than the charges contained in the complaints that have been read to you.  You may not take these acts as substitute for proof that the defendant committed the crimes charged, nor may you consider them as proof that the defendant has a criminal personality or bad character.  You may consider them solely on the limited issue of motive, state of mind, intent, plan, or absence of mistake or accident on the part of the defendant.  You may not consider this evidence for any other purpose. Specifically, you may not use it to conclude that if the defendant committed these acts, he must also have committed the offenses with which he has been charged.  It would be extremely unfair to consider this evidence for those purposes.  For one thing, he has not been charged with anything related to these acts; and moreover, these acts have no relevance whatsoever with respect to the charges in this case."

As to the second prior act, on a date between December 25, 2021, and early January 2022, the defendant told the victim to accompany him to a pharmacy to pick up his medication. After the victim ignored him, the defendant dragged her off the bed, and, during the drive to the pharmacy, "grabbed" her hair. Prior to this portion of the victim's testimony, the judge provided another instruction delineating the limited purposes for which such evidence may and may not be considered.[5] Here again, the defendant did not object to the content of the instruction.

---

[5] The judge again instructed as follows:

"Ladies and gentlemen, you are going to hear some other evidence similar to that beforehand, so let me give you the limiting instruction again. You are about to hear testimony about certain acts allegedly committed by the defendant. The defendant is not charged with committing any of the crimes other than those contained in the complaints that were read to you. You are not to take these acts as a substitute of proof for the defendant committing the crimes that are charged, nor may you consider them as proof that the defendant has a criminal personality or bad behavior; but you may consider the acts solely on the limited issue of motive, state of mind, intent, plan, or absence of mistake or accident on the part of the defendant. You may not consider this evidence for any other purpose. Specifically, you may not use it to conclude that if the defendant committed these acts, he must have also committed the offenses with which he has been charged. It would be extremely unfair to consider this evidence for those purposes. For one thing, he has not been charged with anything related to these acts, and moreover, those acts have no relevance whatsoever to the charges in this case."

In her final jury charge, the judge provided a complete and proper instruction on the limited purposes for which the jury could consider the prior bad act evidence. The defendant did not object to that instruction at trial and, as discussed below, does not challenge the content of that instruction on appeal.

3. Defendant's case. Through cross-examination and argument, the defense centered on the victim's credibility, alleging inconsistencies in her testimony and reporting of the incidents and citing to her delays or failures in reporting certain incidents to law enforcement despite having the opportunity to do so.[6]

Discussion. 1. Limiting instructions. The defendant argues that the final sentences of the judge's contemporaneous limiting instructions contained erroneous language. Specifically, he contends that it was error to instruct the jury that the prior bad acts "have no relevance whatsoever to the charges in this case." See notes 4 and 5, supra. We agree.

We first note that the judge was cognizant of the limited purposes for which the prior bad act evidence could be considered and was conscientious in her efforts to ensure that the jury did not misuse such evidence. Moreover, except for the

---

[6] The defendant also called a digital forensics expert to testify, in essence, that he could not discern the creation date and time of two photographs provided by the victim to the Commonwealth.

errors discussed below, the remainder of the limiting instructions and the entirety of the final instruction on prior bad act evidence comprised accurate statements of the law. However, the disputed portion of the instructions -- the judge's statements that the prior bad acts had "no relevance" -- were incorrect statements of the law, although as we conclude infra, they did not create a substantial risk of a miscarriage of justice.

Evidence must be relevant to be admissible. Commonwealth v. Vitello, 376 Mass. 426, 440 (1978). See Mass. G. Evid. § 402 note (2024), citing Commonwealth v. Seabrooks, 425 Mass. 507, 512 n.7 (1997) ("Unless relevant, evidence will not be admitted because it does not make a fact in dispute more or less probable than it would be without the evidence"). Although inadmissible to show a defendant's bad character or propensity to commit the crimes charged, evidence of a defendant's prior bad acts may be admissible to show a "common scheme, pattern of operation, absence of accident or mistake, identity, intent, or motive." Commonwealth v. Helfant, 398 Mass. 214, 224 (1986). Such evidence, if relevant, "is admissible if its probative value outweighs the risk of unfair prejudice" to the defendant. Commonwealth v. Philbrook, 475 Mass. 20, 26 (2016).

In view of these fundamental legal principles, it is clear that prior bad act evidence must be (as we conclude it was here)

relevant in order to be admitted. Therefore, the portions of the contemporaneous instructions stating that those acts "have no relevance whatsoever to the charges in this case" were error and should not have been provided to a jury. See generally Instruction 3.760 of the Criminal Model Jury Instructions for Use in the District Court (2009).

Our determination of error does not end the analysis. Where, as here, the defendant did not object to the erroneous instructions at trial, we review to determine whether the errors created a substantial risk of a miscarriage of justice. See Commonwealth v. Alphas, 430 Mass. 8, 13 (1999). There was no such risk. The judge merely stated, albeit incorrectly, that such evidence was not relevant. Apart from arguing that this language was "confusing," the defendant fails to articulate how it caused any prejudice. See Commonwealth v. Gladney, 34 Mass. App. Ct. 151, 161 (1993) (noting that no "prejudice resulted" from incorrect instruction). On our review of the entire record, we discern no prejudice arising therefrom for various reasons.

As noted above, the contemporaneous prior bad act instructions were otherwise comprehensive and appropriate. See Commonwealth v. Oberle, 476 Mass. 539, 550 (2017); Mass. G. Evid. § 404(b)(2) (2024). But see Commonwealth v. Fernandes, 492 Mass. 469, 489 (2023), citing Commonwealth v. Samia, 492

Mass. 135, 148 n.8 (2023) ("it generally is insufficient guidance for a trial judge simply to provide a collective list of bad act evidence and then instruct on every possible permissible purpose").[7]  Furthermore, as the defendant acknowledged at oral argument, in the final jury charge the judge provided an accurate prior bad act instruction that omitted the erroneous language.  This clear instruction specified the limited purpose for which the jury could consider such evidence and further mitigated any risk of prejudice.  In addition, "[a]lthough not critical to our result, we note that the jury appear to have paid attention to the judge's warnings about misuse of the evidence because they acquitted the defendant" of other serious charges.  Commonwealth v. Butler, 445 Mass. 568, 576 (2005).  See note 1, supra, and note 9, infra.  Finally, the errors were limited to one sentence that advised the jury that the defendant "has not been charged with

---

[7] In Samia, 492 Mass. at 148 n.8, the Supreme Judicial Court noted in connection with the admission of bad act evidence that "[p]roffering a laundry list of nonpropensity purposes is not helpful, nor is it proper. . . .  Rather, counsel proffering bad act evidence should articulate the precise nonpropensity purpose for the proffered evidence, and the judge should instruct the jury that they may consider the evidence only for that narrow nonpropensity purpose."  The court reiterated these principles in Fernandes, 492 Mass. at 489.  We note that the decisions in Samia and Fernandes issued after the trial occurred in the present case, and thus the judge did not have this guidance. That notwithstanding, the correct practice is for the judge to specify for the jury "the precise purposes for each piece of bad act evidence admitted."  Fernandes, supra.

anything related to" the prior acts, and that those acts "have no relevance whatsoever to the charges in this case." As mentioned above, the defendant makes no persuasive explanation of prejudice. Indeed, instructing the jury that the prior acts were not relevant to the charged conduct, if anything, inured to the defendant's benefit. Accordingly, this is not a case where "we have a serious doubt whether the result of the trial might have been different had the error[s] not been made" (citation omitted). Commonwealth v. Sherman, 481 Mass. 464, 476 (2019).

2. Prior bad act evidence. The defendant also contends that the evidence of the defendant's uncharged conduct was inadmissible because its prejudicial impact outweighed its probative value. The claim is unavailing.

As discussed above, evidence of a defendant's prior bad acts may be admissible to show a "common scheme, pattern of operation, absence of accident or mistake, identity, intent, motive, or state of mind" so long as "its probative value outweighs the risk of unfair prejudice" to the defendant (citation omitted). Philbrook, 475 Mass. at 26. Moreover, "[i]t is well established that in appropriate cases, a defendant's prior acts of domestic violence may be admitted for the purpose of showing a 'defendant's motive and intent and to depict the existence of a hostile relationship between the defendant and the victim.'" Oberle, 476 Mass. at 550, quoting

Commonwealth v. Linton, 456 Mass. 534, 551 (2010). The admissibility of bad act evidence "will largely depend on the circumstances of each case, and admissibility is properly left to the sound discretion of the trial judge." Butler, 445 Mass. at 574-575.

Here, the evidence of the defendant's uncharged conduct was relevant and properly admitted for the limited purpose of showing the hostile nature of the relationship between the victim and the defendant, as well as the defendant's intent. See Oberle, 476 Mass. at 550. It also provided context for the victim's delayed disclosures and allegedly inconsistent statements, which were argued and placed at issue by the defense from opening statement through cross-examination and closing argument. See Commonwealth v. Childs, 94 Mass. App. Ct. 67, 72 (2018) ("Once the jury had knowledge that the victim alleged this was part of an ongoing, continuous abusive relationship, the victim's actions and reactions make logical sense").

In addition, the judge's repeated and comprehensive instructions both during trial and in her final charge to the jury clarified which of the incidents constituted uncharged conduct, specified the limited purpose for which the jury was permitted to consider that evidence, and mitigated any risk of prejudice. See Commonwealth v. Bryant, 482 Mass. 731, 737 (2019) (jury presumed to follow limiting instructions on prior

bad act evidence).[8]  We also note that the judge exercised her discretion to exclude one of the three prior bad acts proffered by the Commonwealth.  See Childs, 94 Mass. App. Ct. at 69 n.1.  Thus, viewing the judge's actions in full context, we cannot say that she "made a clear error of judgment in weighing the factors relevant to the decision . . . such that the decision falls outside the range of reasonable alternatives" (quotation and citation omitted).  L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014).[9]  Contrast Commonwealth v. Crayton, 470 Mass. 228, 252 (2014), cert. denied, 142 S. Ct. 151 (2021) (noting "the unusual case where we conclude that it was an abuse of discretion to admit the [bad act evidence], even with a limiting instruction," where "probative value of the [evidence] was so minimal with regard to the state of mind, knowledge, or intent of the defendant, and because the risk of unfair prejudice was so great" [quotation omitted]).

Judgments affirmed.

---

[8] As discussed above, the errors in the judge's contemporaneous prior bad act limiting instructions were not prejudicial.

[9] We reiterate that the jury acquitted the defendant of kidnapping, witness intimidation, and one count of assault and battery by means of a dangerous weapon, which may provide some indication that the jurors were not unduly swayed by the admission of such evidence.  See Commonwealth v. Lassiter, 80 Mass. App. Ct. 125, 132 (2011); Commonwealth v. Sosnowski, 43 Mass. App. Ct. 367, 372 (1997).